# United States Court of Appeals
## For the First Circuit

No. 99-1805

UNITED STATES OF AMERICA,

Appellee,

v.

HANSON WILSON MILLAN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvator E. Casellas, U.S. District Judge]

Before

Torruella, Chief Judge,
Coffin, Senior Circuit Judge,
and Boudin, Circuit Judge.

Rafael F. Castro Lang, by Appointment of the Court, for appellant.
Antonio R. Bazan, Assistant U.S. Attorney, with whom Guillermo Gil, United States Attorney, Jorge E. Vega-Pacheco, Assistant U.S. Attorney, and Camille Velez-Rive, Assistant U.S. Attorney, were on brief for the appellee.

October 27, 2000

**COFFIN, Senior Circuit Judge.** Defendant-appellant Hanson Wilson Millan appeals from convictions for carjacking that resulted in death, in violation of 18 U.S.C. § 2119(3), and for using a firearm during the commission of the offense, in violation of 18 U.S.C. § 924(c). Appellant claims error in several evidentiary rulings at trial and contends that the prosecutor made improper remarks during his closing argument. We affirm.

## I. BACKGROUND

The facts as the jury could have found them are as follows. In the wee hours of April 5, 1996, appellant was riding in a red Mitsubishi driven by Jose Otero Mendez in Carolina, Puerto Rico. Also along for the ride were Javier Betancourt, his girlfriend, Jomary Aleman Gonzalez, and Geovani Castro Ayala. When a white Nissan with alloy wheels passed by, Otero followed it, intending to swipe the coveted wheels. The Nissan was driven by Juan Manuel Gonzalez Encarnacion ("Gonzalez"), an off-duty police officer who was on his way to his girlfriend's house.

As Gonzalez parked on the street in front of the house, Otero pulled up alongside. Appellant and Betancourt, each armed with handguns, got out and approached Gonzalez' car. Shots were

-3-

fired.  Both Gonzalez and Betancourt were hit and died as a result of their injuries.

At trial it was unclear who fired first.  There was testimony of an initial exchange of bullets between Betancourt and Gonzalez through the driver's side window of Gonzalez' car. Appellant testified that upon hearing gunshots, he fired through the rear window at Gonzalez, who, according to autopsy reports, died instantly.

Betancourt, who had been shot in the abdomen, was assisted into Otero's car and dropped off at the Carolina hospital along with Aleman and Castro.  At the hospital, Aleman and Castro, both juveniles, lied to authorities about how Betancourt was shot, in an attempt to cover up the crime.  After Betancourt died, Aleman and Castro told police what actually happened, and both subsequently pleaded guilty to their accessory roles in the offense and agreed to cooperate and testify.  Appellant and Otero were indicted together, but their cases were severed before trial. Appellant was found guilty and sentenced to imprisonment for life. Pertinent portions of appellant's trial will be recounted in context as part of our analysis of his arguments on appeal.

Appellant asserts three claims of error.  First, he argues that the court erred in refusing to admit a portion of

the government's written version of facts that was attached to Aleman's plea agreement, which, he contends, would have shown that Gonzalez fired first.  Second, appellant claims that the court erred in refusing to permit hearsay testimony about illegal firearms dealing involving Gonzalez, which would have helped refute the government's theory that the shooting occurred during a carjacking.  Third, appellant takes exception to the prosecutor's remarks during closing argument.  We address each of these arguments in turn.

## II.  ANALYSIS

### A.  Refusal to Admit Excerpt from Version of Facts

Appended to Aleman's plea agreement was a three-page statement of facts drafted by the government and signed by the prosecutor and Aleman.  During Aleman's direct testimony at trial, the government sought to introduce the plea agreement along with the version of facts, but defense counsel objected. At a bench conference, counsel stated that he had no objection to the plea agreement, only to the version of facts.  The prosecutor agreed to excise the version of facts and the plea agreement was admitted by itself.

At the close of the defendant's case, his attorney attempted to reintroduce a portion of the version of facts he had successfully barred earlier.  He argued that this part of the version of facts clarified who fired first, an issue disputed at trial.  After a lengthy sidebar conference, the court was persuaded to allow counsel to introduce the version of facts notwithstanding his earlier objection, but ruled that the whole version had to come in, not just the excerpt favorable to his position.  In its consideration of the issue, the district court apparently viewed the government's four-paragraph narrative as an integrated whole, the piecemeal introduction of which would have unfairly distorted the government's version of

events. Counsel declined the invitation to admit the entire version and now claims error in that ruling.

Under the doctrine of completeness codified in Federal Rule of Evidence 106[1], a party wishing to introduce only a portion of a recorded statement may be precluded from doing so where partial disclosure out of context would result in unfairness to the other party. See United States v. Awon, 135 F.3d 96, 101 (1st Cir. 1998) ("The doctrine of completeness . . . operates to ensure fairness where a misunderstanding or distortion created by the other party can only be averted by the introduction of the full text of the out-of-court statement."). The rule permits "a party against whom a fragmentary statement is introduced [to] demand that the rest of the statement (or so much thereof as is appropriate) be admitted into evidence in order to place the excerpt in context." United States v. Houlihan, 92 F.3d 1271, 1283 (1st Cir. 1996). We review Rule 106 completeness determinations for abuse of discretion. See United States v. Thuna, 786 F.2d 437, 441 n.7 (1st Cir. 1986) ("application of rule 106 is left to the sound discretion of the district court"); United States v. Conley, 186 F.3d 7, 22 (1st

---

[1] "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Fed. R. Evid. 106.

Cir. 1999) ("In making determinations as to the completeness of proffered statements, the district court's judgment is entitled to great respect."); accord Houlihan, 92 F.3d at 1283.

After reviewing the version of facts, we find no abuse of discretion in the court's refusal to admit less than the whole document. "[T]he threshold question under Rule 106 is always one of defining the entirety: that is, if Rule 106 applies, what is it that must be complete?" United States v. Boylan, 898 F.2d 230, 256 (1st Cir. 1990). Here, the entirety is easily defined as the government's version of facts. That document bore its own caption and was signed and dated separately from the plea agreement to which it was appended. Early on in the trial, the parties implicitly agreed that the version stood on its own when it was excised from the plea agreement introduced into evidence by the government.

Having determined the version of facts document to be "a reasonable unit of wholeness," we next consider whether the excerpt would "neglect[] some revealing context of the whole." Id. at 257. Although appellant did not indicate on the record which portion he wanted admitted, he points us in his brief to three sentences that, he argues, would have been helpful to his case:

> As Javier Betancourt approached the driver's
> side of the automobile that they intended to

-8-

> carjack, its driver, Juan M. Gonzalez
> Encarnacion, an off duty state policeman,
> fired his revolver at him. Betancourt was
> hit in the stomach area but still managed to
> fire several shots that hit Gonzalez
> Encarnacion. Meanwhile, Hanson Wilson
> Millan fired several shots at Gonzalez
> through the rear window of the car.

This excerpt, plucked mid-paragraph, tells only part of the story portrayed in the government's version of facts. That document also describes, in the government's voice, events leading up to the shooting, including a passage just prior to the excerpt stating that appellant and Betancourt "dismounted the car with firearms in their hands." That appellant approached Gonzalez' car with revolver at the ready bears on the possibility that appellant fired his shots before, or at the same time as, Gonzalez did. Shorn from the context of the entire narrative, the excerpt may have distorted the jury's perception of the government's written version of events. Requiring admission of the entire document was therefore within the district court's discretion.

Furthermore, any error in refusing to admit the excerpt was harmless. Even if the excerpt had been admitted, it would not have been particularly helpful to appellant's case. Contrary to appellant's assertion, the excerpt does not unequivocally settle the issue of who shot first. Though the narrative order of the quoted language may suggest that Gonzalez

fired first, the statement, "[m]eanwhile, [appellant] fired several shots at Gonzalez," could mean that appellant was the first to fire.

The excerpt was also cumulative of appellant's trial testimony. On the stand, appellant admitted to firing several times into the back of Gonzalez' car after seeing Betancourt get hit. He testified that he did not start shooting until after Betancourt had started and that Betancourt returned fire only after being shot. Although the selected excerpt may have on balance corroborated appellant's testimony, excluding it did not preclude appellant from presenting his theory of the case.

Nevertheless, even if the jury had been permitted to consider the excerpt from the government's version of facts and, in combination with appellant's testimony, drew the inference that appellant did not initiate gunfire, it is unclear how that fact might have tended to exonerate him. Establishing that Gonzalez fired first, or even that appellant did not fire first, would have done little to undermine the mens rea element of the offense. The carjacking statute attaches criminal liability to anyone who, with the intent to cause death or serious bodily harm, attempts to take a motor vehicle by force or intimidation.

18 U.S.C. § 2119 (1994).[2]  Violations of the carjacking statute do not turn on who initiated the altercation.  See Holloway v. United States, 526 U.S. 1, 11-12 (1999) (holding that mens rea element of § 2119 is satisfied by conditional intent to cause death or serious bodily harm if necessary to hijack the car); see also United States v. Gandia-Maysonet, No. 98-1144, 2000 WL 1273845, at *3 (1st Cir. Sept. 13, 2000).

The district court determined that fairness to the government required the admission of the whole version of facts. On this record, we are not prepared to hold that determination a harmful abuse of discretion.

B.    Refusal to Admit Testimony of Illegal Firearms Dealing

Appellant's second claim of error is that the court wrongfully refused to admit testimony of illegal firearms dealing involving Betancourt and Gonzalez.  At trial, appellant attempted to show that the shooting did not occur during a carjacking, but was motivated by a dispute over money owed by

---

[2]    Section 2119 states, in pertinent part:
Whoever, with the intent to cause death or serious bodily harm [,] takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall . . .
   (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.

Gonzalez to Betancourt as part of their gun dealing. Appellant's attempts to present this alternate theory to the jury were thwarted by two of the court's evidentiary rulings. The first occurred when, during the defendant's direct testimony, a hearsay objection was sustained that prevented appellant from testifying to the substance of a conversation he heard between Betancourt and Gonzalez about trading illicit firearms. The second ruling barred Otero from testifying that he fled from police because he feared reprisal for knowing that Gonzalez -- a police officer -- was engaged in illicit activity. We review these evidentiary rulings for abuse of discretion. See United States v. Mojica-Baez, Nos. 98-2349 to 2353, 2000 WL 1211013, at *5 (1st Cir. Aug. 30, 2000).

1.   Appellant's Proffered Testimony Was Inadmissible.

Appellant testified on direct examination that he first met Gonzalez in mid-March 1996 when he was driving with Betancourt and they pulled up next to Gonzalez' car in the parking lot of a Burger King. As appellant began to relate what was said between Betancourt and Gonzalez, the government objected strenuously, arguing that the admission of the hearsay statements would be particularly unfair because both declarants were dead.

-12-

At sidebar, counsel proffered that the conversation was about weapons, but that he was not offering it for the truth of the matter asserted. The testimony was admissible, he argued, to show defendant's awareness of firearms dealing. He apparently wanted to bolster appellant's later testimony that his understanding of the purpose of the fatal confrontation with Gonzalez was to collect a debt. However, there was no proffer that the excluded conversation shed any light on the financial dealings of Betancourt and Gonzalez.

At the conclusion of the colloquy on this point, the court gave counsel the opportunity to identify another basis for admission, which we discuss below. Assuming the earlier non-hearsay argument was preserved, we have no difficulty in holding harmless any error in refusing to admit the conversation. Appellant was permitted to testify later as to his state of mind, and the proffered conversation lacking specifics would not have added significantly to appellant's case.

Once it became clear that appellant was not going to prevail on his non-hearsay argument, defense counsel proposed to have the firearms statements admitted under Federal Rule of Evidence 804(b)(3)[3], which permits the introduction of hearsay

_____

[3] The rule defines "statement against interest" in part as "[a] statement which . . . at the time of its making . . . so far tended to subject the declarant to civil or criminal

-13-

testimony where a declarant unavailable to testify had exposed himself to criminal liability in the out-of-court statement. See Williamson v. United States, 512 U.S. 594, 599 (1994) ("Rule 804(b)(3) is founded on the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true."). Whenever offered to exculpate the accused, such statements must be corroborated to "clearly indicate the[ir] trustworthiness." Fed. R. Evid. 804(b)(3); see also United States v. Mackey, 117 F.3d 24, 29 (1st Cir. 1997) ("the requirement for corroboration is not unrealistically severe but does go beyond minimal corroboration") (internal quotation marks omitted). District courts have "'a substantial degree of discretion'" in determining whether a hearsay statement against penal interest offered to acquit the accused has been sufficiently corroborated to be admissible. Mackey, 117 F.3d at 29 (quoting United States v. Barrett, 539 F.2d 244, 253 (1st Cir. 1976)).

---

liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." Fed. R. Evid. 804(b)(3).

The district court apparently assumed without deciding that the statements of Betancourt and Gonzalez were against their respective penal interests, but ruled appellant's testimony about the conversation inadmissible because its trustworthiness had not been sufficiently corroborated. We find no error with this ruling.

The only corroborative evidence offered was the testimony of appellant's cousins, Margarita and Jessica Esquilin, who reported an occasion, prior to the carjacking, when they observed appellant and Betancourt follow a white car after being paged and then return irked because they had been shortchanged money. Appellant argues that the court should have inferred that it was Gonzalez who paged them, that the white car was Gonzalez' and that their vexation over the money had to do with illegal firearms. We agree with the district court that these inferences were too remote to corroborate Gonzalez' hearsay statement. The Esquilins' testimony lacks sufficient detail to lend much assistance to the reliability of the Gonzalez-Betancourt conversation. Because appellant sought to testify to the substance of that conversation and because that substance could not be adequately corroborated, appellant's proffered testimony about illegal firearms dealing was properly excluded as inadmissible hearsay.

2.     Otero's   Testimony   Was   Also   Inadmissible

       Hearsay.

Before appellant took the stand, his attorney tried to elicit the same information about Gonzalez' involvement in firearms dealing from Otero, the co-defendant whose case was severed before trial.  On redirect examination, Otero testified that, after driving the wounded Betancourt to the hospital and dropping off the other passengers, he proceeded to a friend's house, where the police caught up with him.  Observing the officers checking out his vehicle, Otero fled on foot.  Counsel asked Otero whether, at the time the police were looking at his car, he knew Gonzalez was involved in anything illegal.  The government objected, claiming the question was beyond the scope of its cross examination.  The court sustained the objection.[4]

At sidebar, counsel argued for admitting the statement to show Otero's state of mind: he fled fearing retribution from the police because he was aware Gonzalez was a crooked cop.

---

[4]     The Rules of Evidence do not explicitly address the scope of redirect, but state only that cross examination should be limited to the scope of direct.  See Fed. R. Evid. 611(b). We have recognized the Eighth Circuit's rule granting trial courts discretion to limit redirect examination to the scope of cross.  See United States v. Catano, 65 F.3d 219, 226 (1st Cir. 1995) (citing United States v. Braidlow, 806 F.2d 781, 783 (8th Cir. 1986)).  We need not further address that issue today, however, because the district court ruled in the alternative that the proffered statement was hearsay, and we deem this alternative ruling correct.

Otero had testified earlier that he knew of Gonzalez from Betancourt prior to the carjacking, but had no personal knowledge of a debt owed by Gonzalez purportedly due to dealings in illegal firearms. The court sustained the objection, ruling that the question called for inadmissible hearsay. This ruling seems entirely proper. The fact of any illicit activity on the part of Gonzalez could not be proven through the back door, so to speak, by the state of Otero's mind, which was irrelevant to appellant's case.

C. Prosecutor's Closing

Appellant's third claim of error is that, during his closing argument, the prosecutor improperly vouched for the credibility of a government witness and made derogatory remarks about defense witnesses. Because none of the offensive statements were objected to, our review is for plain error. Fed. R. Crim. P. 52(b); United States v. Verrecchia, 196 F.3d 294, 302 (1st Cir. 1999).[5]

During his closing argument, the prosecutor referred to Aleman's plea agreement, in which she had pledged to testify honestly, suggesting that Aleman had no incentive to lie and had

---

[5] The one comment to which an objection was made -- "the penalties at the federal level are a lot stiffer than at the local level" -- was ameliorated by a limiting instruction, which rendered any error harmless. See Fed. R. Crim. P. 52(a).

-17-

indeed testified truthfully.[6]  Because the verdict in this case turned, in part, on Aleman's credibility, appellant argues that the prosecution's assurance about her testimony was plain error.

Although a "prosecutor may not place the prestige of the government behind a witness by making personal assurances about the witness's credibility," United States v. Bey, 188 F.3d 1, 7 (1st Cir. 1999), "an argument that does no more than assert reasons why a witness ought to be accepted as truthful by the jury is not improper witness vouching."  United States v. Rodriguez, 215 F.3d 110, 123 (1st Cir. 2000).  Here, the prosecutor simply pointed out a fact in evidence -- that Aleman's plea agreement required her to testify candidly -- and asserted that she had upheld her end of the bargain by doing so. This was not error.  See Bey, 188 F.3d at 7 ("[A] prosecutor properly may admit a witness's plea agreement into evidence, discuss the details of the plea during closing arguments, and comment upon a witness's incentive to testify truthfully.") (citing United States v. Dockray, 943 F.2d 152, 156 (1st Cir. 1991)).

---

    [6]    The specific passage to which appellant takes exception reads: "I submit to you she is testifying, she has a plea agreement, she has kept that plea agreement. . . . She has a plea agreement to testify truthfully. . . . I submit to you, ladies and gentlemen of the jury, you can consider the fact, consider the fact that she has indeed testified truthfully."

Appellant enumerates several derogatory comments as improperly discrediting himself and other defense witnesses. These remarks generally suggest that appellant concocted the story about Gonzalez' involvement in selling illegal weapons to paint the shooting as precipitated by a dispute over a debt, not a carjacking. For example, in reference to appellant's testimony, the prosecutor told the jury: "you do not have to believe that which nobody else will believe"; "[y]ou have a right not to have anyone insult your intelligence"; "you cannot cover the sky with your hands . . . . [Appellant] has had approximately two and a half years [in pretrial detention] to come up with this story." Referring to Gonzalez and Betancourt, the prosecutor remarked, "Dead men don't come to testify in court. So now it's very easy to try to put words in the mouths of dead people and build a story around these two individuals." And in reference to appellant's cousins, he said, "the testimony of both of the Esquilin sisters are [sic] part of a fabrication." We have considered each of these remarks and find no one particularly egregious; nor do they rise to the level of plain error in the aggregate because they did not "affect[] the outcome of the proceedings." United States v. Hughes, 211 F.3d 676, 684 (1st Cir. 2000) (citing United States v. Olano, 507 U.S. 725, 734 (1993)).

-19-

For the foregoing reasons, the conviction is affirmed.