**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 04-1894

UNITED STATES OF AMERICA,

Appellee,

v.

GODFREY BROOKS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, Chief U.S. District Judge]

Before

Torruella and Lynch, Circuit Judges,
and Lasker,* District Judge.

Rosemary Curran Scapicchio for appellant.
F. Mark Terison, Senior Litigation Counsel, with whom Paula D.
Silsby, United States Attorney, was on brief, for appellee.

March 31, 2006

* Of the Southern District of New York, sitting by designation.

**LASKER**, <u>District Judge</u>.    Appellant Godfrey Brooks ("Brooks") was convicted in January 2004 as a member of a conspiracy to distribute cocaine and cocaine base in Maine.  He was found guilty of several counts, including: conspiracy to distribute and possess with intent to distribute cocaine base under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846 ("Count II"); distribution and aiding and abetting the distribution of cocaine base under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 18 U.S.C. § 2 ("Counts VII and VIII"); and possession with intent to distribute at least five grams of cocaine base and aiding and abetting under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 18 U.S.C. § 2 ("Count IX").  The jury found that the quantity of cocaine base involved in Counts II and IX equaled five or more grams, but that the amount involved in Count II did not exceed fifty grams.

Brooks was sentenced to 276 months on Counts II and IX, and 240 months on Counts VII and VIII, to be served concurrently. The sentence was based on a finding by the court that Brooks was responsible for 73.4 grams of cocaine base, that he was the leader of the conspiracy listed under Count II, and that he had obstructed justice by persisting with a false identification.  As calculated in the Pre-Sentence Report ("PSR") and by the court, the sentencing guideline range for his offense level of 38, and a criminal history category of II, was 262-327 months.

Brooks appeals on six grounds: (1) the sentence is in

excess of what was authorized by the jury and is based on evidence not presented at trial, necessitating a remand under United States v. Booker, 543 U.S. 220 (2005) or United States v. Antonokapolous, 399 F.3d 68 (1st Cir. 2005); (2) disproportionate weight was attributed to drug quantity during the sentencing process and constituted a violation of Brooks' Sixth and Fourteenth Amendment rights; (3) the findings upon which sentencing enhancements were based were clearly erroneous, unsupported by the evidence, as well as in violation of Apprendi v. New Jersey, 530 U.S. 466 (2000), Blakely v. Washington, 542 U.S. 296 (2004), and Crawford v. Washington, 541 U.S. 36 (2004); (4) the court deprived Brooks of his right to confront witnesses; (5) the trial court failed to give a multiple conspiracy instruction; and (6) the prosecutor's improper vouching for the cooperating witnesses affected the outcome of the trial.

For the reasons stated below, we affirm Brooks' conviction and sentence.

## I. Background

Brooks was indicted in May 2003 as a member of one of two overlapping conspiracies to distribute cocaine base. Roderick Allen ("Allen") was the common co-conspirator between one conspiracy run by Easton Wilson ("Wilson"), and another in which Brooks was involved. At trial, Allen testified as a cooperating witness for the Government and provided details about the second

-3-

conspiracy, which included himself, Brooks, Cecile St. Hilaire ("St. Hilaire"), and Linda Williams ("Williams").

In late 2002, Allen and Brooks traveled together from North Carolina to Maine.  Upon arriving in Maine, Brooks and Allen stayed with Williams before driving back to North Carolina.  They returned to Maine soon thereafter, stopping in Boston to pick up cocaine for which Brooks paid, and discussing distribution options to people Allen knew.  Williams and Allen testified that they received cocaine from Brooks, while Donceia Robinson ("Robinson") testified that she purchased cocaine from either Brooks or Williams at least five times.  Brooks was a guest at Williams' home from December 2002 to March 2003.

Nancy LeMar ("LeMar"), with whom Allen stayed for a period, testified that another couple, Josh Arbor ("Arbor") and Nicole Truman ("Truman"), also bought cocaine from Brooks.  Allen confirmed that Brooks supplied LeMar and her boyfriend with cocaine and that Brooks also gave crack to someone who lived downstairs from LeMar.  According to LeMar, Brooks was at her house up to five times a week selling crack.

Due to his own cocaine addiction, Allen became less dependable in the distribution chain and LeMar sometimes dealt with customers such as St. Hilaire, who estimated that she bought cocaine from LeMar several times, as well as directly from Allen and Brooks.  St. Hilaire also recalled meeting LeMar's suppliers,

-4-

identified as Brooks and Allen, as well as driving Allen and Brooks to Boston in order for them to buy cocaine.

About a month after Wilson's arrest, Brooks and Allen broke off relations and Allen returned to North Carolina. Brooks continued to live with Williams and to sell crack from LeMar's home with occasional help from St. Hilaire.

The Maine Drug Enforcement Agency ("MDEA") arranged for Tom Foss ("Foss") to make controlled crack purchases from Williams on April 2 and 9, 2003, which were monitored over a body wire on Foss. Foss first purchased 3.1 grams and then 2.8 grams of crack that Williams claimed she had obtained from Brooks.

A third deal between Williams and Foss was planned by MDEA for 5:00 p.m. on April 11, 2003. According to Williams, Brooks was to provide Williams with $1,000 worth of crack for her to sell to Foss. On the afternoon of April 11, an MDEA agent saw Brooks leave Williams' house in a car. The agent requested a stop by local police in order to identify Brooks. When stopped for driving without a front license plate, Brooks identified himself as Dennis Nembhard and presented a New York driver's license with a photograph that did not resemble him. Brooks was let go with a warning.

That same day, Williams was arrested upon returning to her house, where 6.0 grams of crack were found in a kitchen drawer, and $2,500 in cash was found in a bag. Williams cooperated with

police and made a phone call to Brooks, which was taped. Brooks was arrested upon his return to Williams' house, and, by a subsequent search of his person, was found to possess $1,000 in small bills inside his shoes.

Brooks was tried together with Stephen McMann ("McMann"), a member of the Wilson conspiracy, and found guilty on January 13, 2004. The PSR reflects Brooks' objections to the drug quantity attributed to him as being "insufficiently reliable, based on evidence not presented at trial, and being contrary to the verdict returned by the jury." Brooks also objected to the obstruction of justice and leadership role enhancements. The court ultimately found Brooks responsible for 73.4 grams of cocaine base and sentenced him to 276 months, stating:

> The Court:     I'm not going to give you the 320 months that Mr. Toof thinks you ought to get, and perhaps he is correct. I'm also not going to give you the minimum because I'm concerned that what happened in Connecticut in terms of the outstanding warrants, I'm concerned with the international drug smuggling. I'm going to give you 276 months, which is toward the lower end of the guideline range.

Brooks timely appeals his conviction and sentence on the grounds specified above.

## II. Discussion

### A. Drug Quantity, Leadership Role, and Obstruction of Justice Enhancements

Brooks contends that remand is required because the sentence he received was based on judicial fact-finding in violation of Apprendi, Blakely, and Booker. According to the PSR, Brooks objected to the drug quantity determination on the grounds that it was "insufficiently reliable, based on evidence not presented at trial and ... contrary to the verdict returned by the jury." Brooks also objected to the court's finding that the substance was cocaine base, as well as the enhancements premised on a determination that Brooks played a leadership role and was guilty of obstruction of justice. Based on his objections, Brooks maintains that he preserved a Booker error sufficient to require a remand for resentencing.

The Government argues that Brooks did not in fact present any Apprendi or Blakely objections. Directing our attention to the record, the Government states, "Brooks lodged no constitutional objections based upon Apprendi or Blakely. Thus, he did not preserve Booker error." The Government maintains that the district court's determination of drug quantity and imposition of further enhancements for sentencing purposes were not clearly erroneous because the findings were based on reliable evidence. The Government contends that Brooks cannot show that the sentencing judge would have imposed a lesser sentence under an advisory

-7-

Guidelines system and thus fails to meet the plain error standard necessary to remand an unpreserved <u>Booker</u> error.

This Court has recently defined a <u>Booker</u> error as, "not that a judge (by a preponderance of the evidence) determined facts under the Guidelines which increased a sentence beyond that authorized by the jury verdict or an admission by the defendant; the error is only that the judge did so in a mandatory Guidelines system." <u>Antonakopoulos</u>, 399 F.3d at 75.

A Booker error is only preserved, however, "if the defendant below argued <u>Apprendi</u> or <u>Blakely</u> error or that the Guidelines were unconstitutional." <u>Id</u>. at 76. At a minimum, an objection sufficient to preserve a <u>Booker</u> error "must fall at least arguably within the encincture of the constitutional concerns raised in <u>Apprendi</u>, <u>Blakely</u>, and <u>Booker</u>." <u>United States</u> v. <u>Martins</u>, 413 F.3d 139, 153 (1st Cir. 2005).

Prior to sentencing, Brooks lodged an objection to the PSR, arguing that the drug quantity finding was "insufficiently reliable, based on evidence not presented at trial and ... contrary to the verdict returned by the jury." At sentencing, Brooks' objections to the drug quantity determination, as well as the other sentencing enhancements, were again premised solely on the sufficiency and reliability of the evidence. These types of objections do not amount to <u>Apprendi</u>/<u>Blakely</u> or constitutional arguments that preserve <u>Booker</u> error. <u>See</u> <u>United States</u> v.

-8-

Villafane-Jimenez, 410 F.3d 74, 85 n.13 (1st Cir. 2005); United States v. Bailey, 405 F.3d 102, 114 (1st Cir. 2005). To preserve a Booker error, a defendant must assail, "as a constitutional violation, the imposition of enhancements that bring his sentence above the maximum sentence authorized by jury fact-finding or admitted facts." United States v. Fornia-Castillo, 408 F.3d 52, 73 (1st Cir. 2005). By objecting to the use of hearsay and questioning the credibility of witnesses, Brooks did not present an Apprendi/Blakely or constitutional argument which satisfies the Antonakopoulos standard for preserving Booker error.

Unpreserved Booker error is evaluated according to the plain error standard enunciated in United States v. Olano, 507 U.S. 725, 732 (1993), which consists of four factors: (1) an "error," (2) that is "plain," and (3) that "affects substantial rights." Id. If the first three factors are met, we may exercise our discretion to correct the error, but (4) only if the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. at 736. Any sentence imposed under the mandatory Guidelines system satisfies the first two Olano prongs. Antonakopoulos, 399 F.3d at 77. As to the third and fourth prongs, there must be a "reasonable probability that the district court would impose a different sentence more favorable to the defendant under the new 'advisory Guidelines' Booker regime." Id. at 75.

The sentencing judge's comments do not support a finding

-9-

that there is a reasonable probability he would have imposed a more favorable sentence in the absence of the mandatory Guidelines. The judge specifically sentenced Brooks above the minimum due to concerns with Brooks' outstanding warrants and the international nature of the drug smuggling. Additionally, the judge imposed a supervised release term significantly longer than was mandatory and found that the estimates concerning drug quantity were "extremely conservative." It is unlikely the judge would have imposed a lesser sentence under an advisory Guidelines system, and "[i]t is not enough for a defendant merely to argue that his sentence might have been different had the guidelines been advisory at the time of sentencing." United States v. Sánchez-Berríos, 424 F.3d 65, 80 (1st Cir. 2005). Brooks does not point to anything "concrete ... that provides a plausible basis" for a finding that the judge would have sentenced differently under an advisory Guidelines framework. United States v. Guzmán, 419 F.3d 27, 32 (1st Cir. 2005). Olano prongs three and four therefore are not satisfied and we find that the sentencing based on the judge's findings as to drug quantity did not constitute plain error.

Nor did the judge's findings as to Brooks' leadership role in the conspiracy and obstruction of justice constitute clear error. A leadership role enhancement is appropriate when the sentencing court finds first, that the defendant has acted as an organizer or leader of a criminal activity, and second, that the

activity involved five or more participants or was otherwise extensive. United States v. Olivier-Diaz, 13 F.3d 1, 4 (1st Cir. 1993). Based on the evidence presented, the judge found that Brooks played a leadership role because he

> devised and implemented a plan on how to distribute [the drugs] in terms of locations and distribution network, either ordered others to recruit members of the conspiracy or recruited them himself and issued orders with regard to how the drugs were obtained, stored and distributed.

The judge also found that the conspiracy clearly involved at least seven members who helped Brooks "deliver cocaine, helped him re-supply with cocaine and provided him with transportation." The record supports the judge's conclusion as to Brooks' leadership role and because "such 'role in the offense' assessments are fact-specific, the district court's views must be accorded 'considerable respect.'" Id. (citing United States v. Ocasio, 914 F.2d 330, 333 (1st Cir. 1990)). We therefore find that no clear error was committed.

Finally, the obstruction of justice enhancement was not clearly erroneous. Perjury serves as a trigger for the obstruction of justice enhancement, United States v. Campbell, 61 F.3d 976, 984 (1st Cir. 1995), and the sentencing judge correctly assessed that Brooks committed perjury. In continually denying that he sold any cocaine or was involved in cocaine trafficking in Maine, Brooks willfully provided false testimony as to a material fact. The

-11-

judge cited a litany of instances from the record in which Brooks denied selling or trafficking cocaine despite the significant evidence indicating otherwise. We can overturn the district court's findings as to the obstruction of justice enhancement only if they are clearly erroneous, United States v. Tracy, 36 F.3d 199, 202 (1st Cir. 1994), and the record negates such a finding.

In sum, given the lack of plain error under Booker or as to the weight given to the drug quantity, and the absence of clear error as to the leadership role and obstruction of justice enhancements, the sentence is affirmed.

## B. Multiple Conspiracy Instruction

Brooks contends that, because he was tried concurrently with McMann, the distributor for Wilson's conspiracy, a multiple conspiracy instruction was required and the judge's failure to give such an instruction resulted in a violation of Brooks' right to a fair trial. The Government argues that, at trial, Brooks' counsel requested only standard instructions and, after the judge instructed the jury, Brooks' counsel failed to object to the conspiracy instruction or ask for a multiple conspiracy instruction.

Brooks' counsel did not request a multiple conspiracy instruction, nor did he object to the conspiracy instructions after they were explained to the jury. Plain error review therefore applies. See Ramirez-Burgos v. United States, 313 F.3d 23, 28-29

(1st Cir. 2002); United States v. Mitchell, 85 F.3d 800, 807 (1st Cir. 1996).

A court "should instruct on the [multiple conspiracy] issue 'if, on the evidence adduced at trial, a reasonable jury could find more than one such illicit agreement, or could find an agreement different from the one charged.'" United States v. Balthazard, 360 F.3d 309, 315-16 (1st Cir. 2004) (quoting United States v. Brandon, 17 F.3d 409, 449 (1st Cir. 1994)). Plain error is not evident in the district court's failure to charge multiple conspiracies, however, because Count I charged a conspiracy involving McMann and not Brooks, while Count II charged a conspiracy including Brooks, but not McMann. Furthermore, in his instructions on conspiracy, the judge correctly instructed the jury that the Government had to prove beyond a reasonable doubt that "the agreement specified in the indictment, and not some other agreement or agreements, existed between at least two people." See United States v. Gómez-Rosario, 418 F.3d 90, 104-105 (1st Cir. 2005). Counts I and II are largely distinct in time and membership such that McMann and Brooks cannot be said to have been charged as members of a single overarching conspiracy and the jury did not have an opportunity to convict Brooks of the same conspiracy to which McMann was a party. Given the separate conspiracies with which McMann and Brooks were charged, a multiple conspiracy charge was not warranted.

Furthermore, we find that the jury's verdict - which, by its differentiation of the drug quantities involved in each conspiracy reflected the jury's understanding that the two conspiracies were distinct - is dispositive on the question of whether the proceedings suffered from unfairness or prejudice. In finding McMann guilty on Count I, the jury determined that the first conspiracy was responsible for more than fifty grams of cocaine base. In finding Brooks guilty on Count II, however, the jury determined that the second conspiracy was responsible for more than five grams but less than fifty grams of cocaine base. The verdict belies Brooks' claim that the jury found him to be part of a single overarching conspiracy which included McMann. Contrary to Brooks' assertion that the jury failed to identify more than one conspiracy, the verdict reveals the jury's clear cognizance that multiple conspiracies existed and therefore leaves us incapable of finding that a multiple conspiracy instruction was necessary to render Brooks' trial fair.

## C. Right to Confront Witnesses

Brooks argues that the admission of out-of-court statements by his co-conspirators violated his right to a fair trial. Brooks asserts that on several occasions during the trial, statements made by witnesses who were not available for cross-examination were permitted in violation of Crawford v. Washington. The Government contends that, although Crawford applies to

testimonial statements, the statements Brooks disputes were made by co-conspirators "in furtherance of a conspiracy," and therefore were not testimonial in nature. Id. at 56. Brooks did not raise this issue below and we therefore review for plain error. See Mitchell, 85 F.3d at 807.

Brooks' allegation that the statements at issue were subject to Crawford fails to recognize that we find statements of co-conspirators to be nontestimonial and thereby not subject to Crawford. See United States v. Felton, 417 F.3d 97, 103 (1st Cir. 2005) ("[T]he statements [of co-conspirators] fall within a firmly rooted hearsay exception, so their admission does not violate [the defendant's] Sixth Amendment rights."). We also fail to see the relevance of Brooks' objection to the disputed double hearsay statements - they pertain only to the McMann conspiracy in Count I and make no mention of Brooks. We therefore do not find the admission of these statements to constitute error.

**D. Improper Vouching for Cooperating Witnesses**

Brooks contends that, although witness plea agreements may be admitted into evidence for purposes of assessing credibility, United States v. Doherty, 675 F.Supp. 726, 738 (D. Mass. 1987), the Government's closing statement constituted improper vouching for each cooperating witness to the extent that the trial outcome was likely affected. The Government responds that the prosecutor's statements during the closing argument did

not constitute improper vouching because "the prosecutor simply pointed out a fact in evidence - that [the witnesses'] plea agreement[s] required [them] to testify candidly," United States v. Millan, 230 F.3d 431, 438 (1st Cir. 2000), and the statements did not insinuate any personal belief which took advantage of the prosecutor's status as "a representative of the government." United States v. Figueroa-Encarnacion, 343 F.3d 23, 28 (1st Cir. 2003).

We have previously held that it is not error for the prosecutor to "assert reasons why a witness ought to be accepted as truthful by the jury." United States v. Rodríquez, 215 F.3d 110, 123 (1st Cir. 2000). The prosecutor may properly "admit a witness' plea agreement into evidence, discuss the details of the plea during closing arguments, and comment upon a witness' incentive to testify truthfully." United States v. Bey, 188 F.3d 1, 7 (1st Cir. 1999) (citing United States v. Dockray, 943 F.2d 152, 156 (1st Cir. 1991)). Prosecutorial behavior crosses into the realm of improper vouching when the prosecutor "places the prestige of the government behind a witness by making personal assurances about the witness' credibility." Id. at 7 (quoting United States v. Neal, 36 F.3d 1190, 1207 (1st Cir. 1994)).

In the closing arguments, after summarizing the terms of the plea agreement, the prosecutor made the following remark:

> So you can either take the defense version,
> they clearly suggest that these guys will say

> anything in order to convict these men in order to earn a lower sentence or at least the recommendation from the government, or they have to comply with the plea agreement. I'll leave it at that.

With nothing further, the prosecutor's conduct cannot be found to constitute an instance of improper vouching. The prosecutor discussed the details of the agreement and commented upon the witnesses' motivations stemming from the plea agreements, actions which we have deemed acceptable. See Millan, 230 F.3d at 438. The record contains no indication that the prosecutor personally endorsed the witnesses and therefore no prejudice resulted from a sense that the Government backed the witnesses. Brooks fails to provide any other evidence indicating improper vouching that might have affected the outcome of the trial. United States v. Wihbey, 75 F.3d 761, 771-72 (1st Cir. 1996) ("Improper statements during closing argument are considered harmful if, given the totality of the circumstances, they are likely to have affected the trial's outcome."). We therefore find that the prosecutor's closing remarks did not constitute improper vouching.

### III. Conclusion

For the reasons stated herein, Brooks' conviction and sentence are affirmed.